UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DAVID V. MAYO,** for himself and others similarly situated, | Civil Action No. 21-02964 |
| Plaintiff, | |
| v., | |
| **TITLEMAX OF DELAWARE, INC.,** and **TRACY YOUNG,** | PLAINTIFF DEMANDS A TRIAL BY JURY |
| Defendants. | |

## Amended Class Action Complaint

The defendants in this case are engaged in asset based lending in Pennsylvania at usurious triple digit interest rates. Defendants lent David V. Mayo $7,751.39 at **132.01% A.P.R.** secured by his vehicle in Pennsylvania, and are threatening to come to Pennsylvania to repossess the vehicle unless he pays $33,452.71 in interest. Plaintiff is entitled to relief under the Pennsylvania Loan Interest and Protection Law, 41 P.S. § 201 *et seq.*, the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, and avers:

### Parties

1. Plaintiff David V. Mayo is a citizen of Pennsylvania residing at 1247 Kerper Street, Phila., PA 19111.

2. TitleMax of Delaware, Inc. ("TitleMax") is a corporate entity believed to be chartered in the state of Delaware with an office at 3401 Kirdwood Highway, Wilmington, DE 19808.

3. Tracy Young is the chief executive officer of TMX Finance, LLC ("TMX"), parent corporation of Titlemax. Tracy Young is believed to be the sole shareholder of all TitleMax corporations and oversees the operation of all TitleMax corporations as President and CEO. Mr. Young runs TMX and all of its subsidiaries from an office at 15 Bull St. #200, Savannah, GA 31401

4. Mr. Young is in charge of TitleMax of Delaware and directs it to make high interest auto title loans to citizens of Pennsylvania.

## Background

5. TitleMax runs a sophisticated loan sharking operation in which it makes small loans at triple digit rates of interest to consumer borrowers secured by their cars. These loans are used to exploit borrowers with poor credit and a crushing need for cash.

6. As long as a borrower has a car with a clean title as security, TitleMax will make a loan at a triple digit rate of interest without regard for the borrower's ability to repay.

7. TitleMax is engaged in asset based lending in Pennsylvania. For each loan TitleMax makes to a customer in Pennsylvania, TitleMax acquires a property interest in collateral located in the Commonwealth and records a lien on the collateral with the Pennsylvania Department of Transportation.

8. TitleMax admits to having substantial contacts in Pennsylvania.

9. TitleMax admits to entering into over 1,100 asset based loans with Pennsylvania consumers in a recent 18 month period. Exhibit P-1 (Notice of Removal ¶ 24).

10. TitleMax further admits, based on past performance, that it anticipates extracting over $6,600,000 in usurious interest from Pennsylvania consumers over the next 18 months. Exhibit P-1 (Notice of Removal ¶ 25)

11. TitleMax collects defaulted loans by repossessing vehicles. If TitleMax repossesses vehicles for only 10% of its most recent group of 1,100 Pennsylvania borrowers over the next year, that would be 110 repossessions, for an average of one repossession every three days. If TitleMax is repossessing vehicles in Pennsylvania at the average rate of one every three days, TitleMax has a regular and systematic presence in the Commonwealth of Pennsylvania.

12. It is likely that many of the vehicles TitleMax repossesses in Pennsylvania are also stored and sold at automobile auction facilities in Pennsylvania.

13. TitleMax has a presence in Pennsylvania through the use of a mobile application Pennsylvanians can use to monitor their accounts and pay their loans. Exhibit P-2. Mr. Mayo used the application.

14. Pennsylvania's usury statute is unwaivable, but TitleMax insists that it can make Pennsylvania borrowers waive the law's protection by having them sign a loan agreement that contains a Delaware choice of law clause. Loan Interest and Protection Law ("LIPL") 41 P.S. § 408 ("*Notwithstanding any other law* [which includes Delaware law],

the provisions of this act may not be waived by any oral or written agreement executed by any person.") (emphasis added).

15. The Delaware choice of law clause is unenforceable. *Kaneff v. Delaware Title Loans, Inc.,* 587 F.3d 616, 624 (3d Cir. 2009) (applying Pennsylvania law to high interest auto title loan from Delaware lender to Pennsylvania borrower); *Gregoria v. Total Assets Recovery, Inc.*, 2015 WL 115501, *5 & n.6 (E.D. Pa. 2015) (following *Kaneff* and applying Pennsylvania law to a Delaware auto title loan at 150% A.P.R.); *Auto Equity Loans v. Baird,* No. N18A-08-001-DCS, at nn. 57 & 63 (Del. Superior Ct., Sept. 20, 2019), *aff'd ,* 232 A.3d 1293 (Del. 2020) (confirming arbitration awards applying Pennsylvania law to high interest auto title loans taken out in Delaware by Pennsylvania borrowers) (available on Fastcase). *See generally Cash America Net v. Commonwealth of Pennsylvania*, 607 Pa. 432, 437-38, 8 A.3d 282, 285-86 (2010) (out of state lenders must observe Pennsylvania usury laws). The Pennsylvania Department of Banking would consider TitleMax to be doing business in Pennsylvania, subject to Pennsylvania law. *Commonwealth v. Carbucks of Delaware, Inc.*, No. 180066, ¶¶ 5-16 (Pa. Dept of Banking and Securities, Sept. 26, 2018) (Consent Agreement and Order attached as Exhibit P-3).

## Facts

16. David V. Mayo is the owner of a 2020 Ford Fusion (the "Vehicle") that he was given as a gift. The Vehicle has a fair market value over $20,000. Exhibit P-4.

17. The Vehicle was titled, registered, and licensed in Pennsylvania.

18. Mr. Mayo keeps the Vehicle at his home in Pennsylvania.

19. Over the past winter, Mr. Mayo experienced financial hardship as a result of the Covid-19 pandemic. Mr. Mayo was behind on bills and needed cash.

20. Mr. Mayo has poor credit and was turned down for credit from conventional lenders. As a result of an internet search, Mr. Mayo ended up applying for a loan from Titlemax.

21. On April 10, 2021, TitleMax gave Mr. Mayo a loan for $7,751.39 at **132.01% A.P.R.** A copy of the loan agreement is attached as Exhibit P-5.

22. The loan is payable in 48 monthly installments of $858.42. The finance charge is **$33,452.71**. In total, TitleMax seeks to be paid a total of $41,204.10 to satisfy a loan for only $7,751.39. Exhibit P-5.

23. Titlemax hid the terms from Mr. Mayo when he took out the loan. The Titlemax loan officer prepared the loan agreement on a computer located at a counter in the TitleMax office. The computer screen was facing the loan officer, not Mr. Mayo. The loan officer had Mr. Mayo accept the agreement on the computer, but the loan officer did not turnover control of the computer to Mr. Mayo so he could see the entirety of the agreement he was accepting. TitleMax did not let Mr. Mayo see the disclosure of the annual percentage rate, finance charge, total payments, or payment schedule.

24. The legal rate of interest for an unlicensed lender in Pennsylvania is only 6% per annum. 41 P.S. § 201. At the legal rate of interest, Mr. Mayo would owe a finance charge of only $986, but Titlemax is seeking to collect 36 times that amount.

25. At $858.42 per month, the payments on the loan are higher than Mr. Mayo can afford.

26. The $33,452.71 in interest Mr. Mayo is scheduled to pay on the loan is money Mr. Mayo needs for his own living expenses in Pennsylvania for basic necessities for things such as rent, food, clothing, healthcare, transportation, and communications.

27. TitleMax will come to Pennsylvania and repossess Mr. Mayo's Vehicle if and when Mr. Mayo defaults.

28. Mr. Mayo needs his Vehicle for transportation to work, and will suffer substantial and irreparable injury if the Vehicle is repossessed, including loss of income and loss of ability to support himself.

29. TitleMax recorded a lien for the loan with the Pennsylvania Department of Transportation.

30. Mr. Mayo makes payments on the loan from Pennsylvania, over the internet, by phone, or through the TitleMax smartphone application.

## Class Action Allegations

31. Plaintiff seeks to represent a class defined as follows: Citizens of Pennsylvania who may in the future enter into an agreement with Titlemax for a loan for personal, family, or household purposes, secured by the borrower's automobile, at a rate of interest at or greater than 30% A.P.R.

32. There are fundamental questions of law and fact that apply to the class, including: (1) Whether Titlemax can use a choice of law clause in its loan agreement to waive out of the application of Pennsylvania usury laws; (2) Whether a foreign choice of law clause in a high interest auto title loan contract to a Pennsylvania consumer borrower is enforceable under 41 P.S. 408; (3) Whether Pennsylvania has a materially greater interest

6

than Delaware in the application of its usury laws to high interest loans to citizens of Pennsylvania secured by their vehicles; (4) whether misrepresenting the legally enforceable rate of interest and amount of debt in a consumer loan constitutes an unfair or deceptive act or practice under the Unfair Trace Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-2(4); (5) whether Mr. Young is operating TitleMax of Delaware, Inc., through the collection of unlawful debt in violation of RICO, 18 U.S.C. § 1962(c).

33. Mr. Mayo's claims are typical of the claims of other proposed class members, and the defenses will all be the same. The underlying issue is whether a high interest auto title lender can effectively make borrowers waive out of application of the LIPL through the use of a foreign choice of law clause in a loan agreement. The arguments for and against the enforceability of the choice of law clause will be the same for all borrowers.

34. Mr. Mayo will fairly and adequately represent the interests of class members. Counsel will adequately represent the class; Mr. Mayo does not have any conflicts of interest, and the case should not involve any expenses beyond the plaintiff's reach.

35. A class action is a fair and efficient method for adjudicating the case because:

(a). Common questions of law and fact predominate over questions affecting individual class members. One common question undergirds class relief. Whether a high interest auto title lender can use a foreign choice of law clause in a loan agreement to waive out of the LIPL. The arguments for and against the enforceability of the choice of law clause will be the same for all Pennsylvania borrowers.

(b).  Since plaintiff is seeking only declaratory and injunctive relief, the size of the class is not an issue. There will be no damages to calculate or distribute.

(c).  Prosecution of separate actions could create a risk of inconsistent standards that the defendant may not be able to negotiate.

(d).  The adjudication of the present case will likely be dispositive as to other borrowers in the same or similar circumstances and protect borrowers who might not know the rate of interest is illegal.

(e).  Plaintiff is not aware of any other litigation effecting the class.

(f).  The US District Court for the Eastern District of Pennsylvania is an appropriate forum to handle the case because, among other reasons, it is the location where Titlemax would come to repossess Mr. Mayo's vehicle, the location where Mr. Mayo will sustain his injury, and the location of other Titlemax borrowers.

(g).  The litigation of separate actions by individual class members would be considerably more expensive than a single class action;

(h).  Equitable and declaratory relief is appropriate because the same arguments apply for and against all class members pertaining to the underlying issue.

### Count I

36.  Mr. Mayo brings this count for himself and the class for declaratory judgment under the Loan Interest and Protection Law ("LIPL"), 41 P.S. §§ 101 *et seq.* All of the preceding paragraphs are incorporated by reference.

37.  Mr. Mayo asks the court to declare that Pennsylvania law under the LIPL applies to TitleMax's auto title loans to Pennsylvania borrowers in accordance with

the most significant relationship test of the Restatement (Second) of Conflicts of Law ("Restatement"), §§ 6, 187, and 188.

38. Pursuant to section 6(1) of the Restatement (Second) of Conflicts of Law, a court should follow the statutory choice of law directives of the forum state. The LIPL has a statutory directive for the application of Pennsylvania law to loan agreements with Pennsylvania citizens in the anti waiver provision at 41 P.S. § 408 ("Notwithstanding any other law [which includes Delaware law], the provisions of this act [the LIPL] may not be waived by any oral or written agreement executed by any person").

39. Under section 187 of the Restatement, a choice of law clause is unenforceable if the chosen law violates a fundamental policy of the state with the greatest interest in the transaction. *Kaneff v. Delaware Title Loans*, 587 F.3d 616, 621-22 (3d Cir. 2009).

40. Pennsylvania has a materially greater interest than Delaware in the enforcement of its usury laws for the protection of Pennsylvania borrowers because the harm caused by TitleMax's high interest rates occur in Pennsylvania, and not Delaware.

41. TitleMax's 132.01% rate of interest inflicts harm on Pennsylvania borrowers by:

(a). Depriving Pennsylvania borrowers of thousands of dollars of income they need for support, to pay for housing, food, clothing, medical care, transportation, and communications for themselves and their families; TitleMax wants Mr. Mayo to pay $33,452.71 in interest on a $7,751.39 loan, which is clearly money Mr. Mayo needs for his own support;

(b). Depriving Pennsylvania merchants of sales revenues because borrowers have to surrender thousands of dollars in usurious income to TitleMax that they could otherwise spend in Pennsylvania;

(c). Depriving the Commonwealth of Pennsylvania of sale's tax revenues on commerce that will not take place because borrowers are paying thousands of dollars of usurious interest to TitleMax;

(d). Disrupting the lives of Pennsylvania borrowers and their families by repossessing the vehicles upon which they depend for transportation to work, school, medical care, shopping, and family;

(e). Jeopardizes the employment and income of Pennsylvania borrowers by depriving them of transportation to work, inevitably causing some borrowers to lose their jobs;

(f). Disrupting Pennsylvania businesses who depend on their employees to have transportation to work;

(g). Draining the public fisc of the Commonwealth by causing increased expenditures for unemployment compensation and medical care for borrowers who become unemployed.

42. The LIPL, 41 P.S. §§ 201 *et seq.*, represents a fundamental policy of the Commonwealth based on the fact that it is unwaivable and violations are subject to criminal penalties. 41 P.S. §§ 408 & 505. The purpose of the LIPL is to protect Pennsylvania and its consumers from all of the adverse consequences identified above.

43. Delaware has an interest in the success of its corporate citizen, but that interest pales in comparison to Pennsylvania's need to protect its consumers and their families from economic exploitation and calamity.

44. Under the Pennsylvania Consumer Discount Company Act ("CDCA"), 7 P.S. §§ 6201 *et seq.* a lender can make consumer loans in Pennsylvania at rates of interest up to about 24% A.P.R, *Cash America Net v. Commonwealth of Pennsylvania,* 607 Pa. 432, 437-38, 8 A.3d 282, 285-86 (2010), which under normal circumstances is considered high interest.

45. The Delaware choice of law clause in TitleMax's contract would not violate a fundamental policy of Pennsylvania law if TitleMax made loans at a commercially reasonable rate of interest that approximated the 24% rate legal under the CDCA, but lending at 132% is five and a half times that amount. Lending at 132% A.P.R. is confiscatory and exploitative.

46. Pennsylvania law does not prohibit TitleMax from making loans to Pennsylvania borrowers at commercially reasonable rates of interest that allow for a reasonable rate of return.

47. Delaware's interest in TitleMax's economic viability is preserved under Pennsylvania law.

WHEREFORE, Mr. Mayo asks the court to declare:

(a). The LIPL, 41 P.S. 201, *et seq.*, applies to high interest auto title loans from TitleMax to Pennsylvania consumer borrowers;

    (b). Pennsylvania has a materially greater interest than Delaware in the application of its usury laws to high interest auto title loan transactions with Pennsylvania consumer borrowers to protect them from economic exploitation;

    (c). The LIPL represents a fundamental policy of the Commonwealth of Pennsylvania;

    (d). The Delaware choice of law clause in TitleMax's title loan contracts is not enforceable against Pennsylvania borrowers on loans at 132% A.P.R. or greater or in any loan agreement in which the rate of interest is not commercially reasonable; and

    (e). Mr. Mayo has no obligation to repay the loan at a rate greater than 6% per annum, which requires a monthly payment of $182.04, until paid in full;

    (f). Award Mr. Mayo attorneys' fees and costs;

    (g). Grant any other relief that is just and appropriate.

## Count II

48. Mr. Mayo brings this count for himself and the class against Tracy Young for a declaratory judgment that Mr. Young is operating TitleMax in violation of the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C § 1962(2), by making usurious loans to citizens of Pennsylvania. All of the preceding paragraphs are incorporated by reference.

49. Mr. Young is a person within the meaning of section 1962(c).

50. Titlemax is a corporation which qualifies as an enterprise under section 1962(c). *Cedric Kushner Promotions, LTD., v. Don King*, 533 U.S. 158 (2001).

51. Mr. Young is employed by or associated with Titlemax; specifically he is an owner or officer of Titlemax with authority to direct its activities.

52. Titlemax is engaged in interstate commerce. Specifically, Titlemax is a citizen of Delaware, with an administrative office in Georgia, and makes loans to citizens of Pennsylvania, such as Mr. Mayo.

53. Mr. Young conducts the affairs of Titlemax or participates in the affairs of Titlemax through the collection of unlawful debt in violation of 18 U.S.C. § 1962(c).

54. Specifically, Mr. Young directs Titlemax to collect unlawful debt from borrowers who are citizens of Pennsylvania by recording liens on their vehicles with the Pennsylvania Department of Transportation, repossessing vehicles from within Pennsylvania, and coercing Pennsylvanians to pay usurious interest.

55. Titlemax's loan to Mr. Mayo constitute unlawful debt within the meaning of section 1962(c) as the term is defined in section 1961(6). Specifically, (a) almost all of the interest Titlemax collects is unenforceable under the usury laws of Pennsylvania, (b) Titlemax is in the business of making loans to citizens of Pennsylvania at usurious rates of interest, and (c) Titlemax charges interest far in excess of twice the legally enforceable rate in Pennsylvania.

56. Mr. Mayo suffered an injury as a result of Mr. Young's conduct at Titlemax. Specifically, Titlemax has pocketed just about all of the money its received from Mr. Mayo has usurious interest and has placed a lien on Mr. Mayo's car to secure the payment of $33,452.71, consisting mostly of usurious interest.

WHEREFORE, Mr. Mayo requests the following relief:

    (a). For himself and the class, a declaration that Mr. Young is operating TitleMax through the collection of unlawful debt in violation of 18 U.S.C. § 1862(c), by collecting usurious interest from citizens of Pennsylvania;

    (b). For himself, an award of damages equivalent to three times Mr. Mayo's actual damages including but not limited to compensation for funds wrongfully applied to pay usurious interest, although some of the funds may be set off against any balance due on the loan, if any;

    (c). An order requiring Mr. Young to remove the lien from the title to Mr. Mayo's car upon full payment of the debt calculated at 6% per annom;

    (d). An award of attorney's fees and costs; and

    (e). Any other relief that is just and appropriate.

## Count III

57. Mr. Mayo brings this count for himself against TitleMax for violation of the Truth-In-Lending Act, 15 U.S.C. §§ 1601 *et seq.* All of the preceding paragraphs are incorporated by reference.

58. The TitleMax employee who serviced Mr. Mayo prepared his loan agreement on a computer at a counter. The computer monitor was facing the employee, and not Mr. Mayo. The employee never turned the monitor around for Mr. Mayo to see any sort of image of the loan agreement or the Truth in Lending Disclosures on the computer monitor. The employee never gave Mr. Mayo control of the computer, so that he could scroll through and review an image of the agreement so Mr. Mayo could see the Truth in Lending Disclosures.

59. TitleMax failed to show Mr. Mayo the material Truth-In-Lending disclosures prior to Mr. Mayo becoming bound to the loan contract. Mr. Mayo never saw the A.P.R., finance charge, amount financed, total payments, total sale price, or the itemization of the amount financed until after the transaction was complete.

60. Without giving Mr. Mayo control over the computer to review the contract, Mr. Mayo had no meaningful opportunity to view the Truth In Lending disclosures.

61. Even if Mr. Mayo had seen the disclosures, they were inaccurate.

62. TitleMax disclosed an unlawful usurious rate of interest that did not accurately reflect Mr. Mayo's legal obligation in violation of 12 C.F.R. §1026.17(c).

63. Even if Mr. Mayo had seen the Truth In Lending disclosures on the computer screen, the disclosures would still be invalid because Mr. Mayo did not consent to the use of electronic Truth in Lending disclosures in place of written disclosures in accordance with 12 C.F.R. § 1026.17(a)(1) and 15 U.S.C. § 7001(c).

WHEREFORE, Mr. Mayo requests judgment against TitleMax for actual and statutory damages along with attorney's fees and costs and any other relief that is just and appropriate.

### Count IV

64. Mr. Mayo brings this claim for himself and the class for engaging in fraudulent or deceptive conduct in violation of the Unfair Trade Practices and Consumer Protection Law, 73 P.S. § § 201-3. All of the preceding paragraphs are incorporated by reference.

65. The Unfair Trade Practices and Consumer Protection Law ("UTPCPL") renders it unlawful for any person engaging in a trade or business to commit unfair and deceptive acts and practices. 73 P.S. § 201-3.

66. TitleMax is a person engaging in a trade or business within the meaning of the UTPCPL.

67. TitleMax is engaging in unfair and deceptive acts, including, but not limited to:

(a). Misrepresenting to Mr. Mayo in violation of 73 P.S. § 201-2(4)(ii), (v), (vii) & (xxi), that an interest rate of 132.01% A.P.R. is legally enforceable in Pennsylvania when it is not;

(b). Misrepresenting to Mr. Mayo in violation of 73 P.S. § 201-2(4)(ii), (v), (vii) & (xxi), that he is liable to pay a finance charge far in excess of what he actually owes at 6% per annum under Pennsylvania law;

(c). Misrepresenting to Mr. Mayo in violation of 73 P.S. § 201-2(4)(ii), (v), (vii) & (xxi), that TitleMax was allowed to apply his payments to usurious interest;

(d). Misrepresenting to Mr. Mayo in violation of 73 P.S. § 201-2(4)(ii), (v), (vii) & (xxi), that TitleMax is entitled to repossess Mr. Mayo's car to coerce payment of usurious interest even though such a repossession would be illegal;

(e). Misrepresenting to Mr. Mayo in violation of 73 P.S. § 201-2(4)(ii), (v), (vii) & (xxi), that the loan was legal when, in fact, it violated Pennsylvania's civil and criminal laws against usury; and

(f). Misrepresenting to Mr. Mayo in violation of 73 P.S. § 201-2(4)(ii), (v), (vii) & (xxi), the amount of the balance due on the loan.

68. The various misrepresentations referenced above include verbal and written statements of the loan balances and monthly payment amounts uttered to Mr. Mayo at every step of the transaction, before, during and after execution of the loan documents.

69. Mr. Mayo justifiably relied on TitleMax's misrepresentations, and has paid sums in excess of his legal liability to prevent his vehicle from being repossessed.

70. Mr. Mayo was damaged when TitleMax applied his payments to usurious interest instead of to the principal balance due on his loan.

WHEREFORE, Mr. Mayo requests the following relief for himself and the class:

(a). Enjoin TitleMax from misrepresenting to Pennsylvania borrowers that they are liable for payment of any rate of interest to TitleMax that would be illegal under Pennsylvania law;

(b). Enjoin TitleMax from applying borrower payments to usurious interest;

(c). Award Mr. Mayo individually actual and treble damages for all payments applied by TitleMax to usurious interest;

(d). Award Mr. Mayo reasonable attorney's fees and costs; and

(e). Award Mr. Mayo any other relief that is just and appropriate.

Respectfully submitted,

_____
ROBERT F. SALVIN, Esq.,
Counsel for Plaintiff