FILED

2018 SEP 26 AM 9:58

PA DEPARTMENT OF
BANKING AND SECURIT[Y]

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF BANKING AND SECURITIES

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF BANKING AND SECURITIES, COMPLIANCE OFFICE | : : : : |
| v. | : Docket No.:18 0066 (BNK-CAO) |
| CARBUCKS OF DELAWARE, INC. | : : |

## CONSENT AGREEMENT AND ORDER

The Commonwealth of Pennsylvania, acting through the Department of Banking and Securities' ("Department") Compliance Office, has investigated the business practices of Carbucks of Delaware, Inc. ("Carbucks") and its officers, employees and directors. Based on the results of its investigation, the Compliance Office concludes that Carbucks engaged in the Commonwealth in the consumer discount business without a license in violation of the Consumer Discount Company Act ("CDCA"), 7 P.S. §§ 6201- 6219, and the Act of January 30, 1974, P.L. 13, No. 6 known as the Loan Interest Protection Law ("LIPL"), as amended by Act of April 12, 2012, 41 P.S. §§ 101-605. Carbucks, without admitting or denying any of the allegations herein, agrees to the terms of this Consent Agreement and Order ("Order").

### BACKGROUND

1. The Department is the Commonwealth of Pennsylvania's administrative agency authorized and empowered to administer and enforce the CDCA and the LIPL.

2. The Compliance Office has the responsibility to administer and enforce the CDCA and the LIPL on behalf of the Department.

3. The Compliance Office operates from its offices at 17 North Second Street, Suite 1300, Harrisburg, Pennsylvania 17101.

4. Carbucks is organized under the laws of Delaware with a principal address of 2702 W. Azeele Street, Tampa, Florida 33609.

5. Carbucks and Pennsylvania residents executed loan contracts in Delaware using motor vehicles registered in Pennsylvania as security for the loans.

6. Loan proceeds were transferred from Carbucks to Pennsylvania residents in Delaware.

7. Carbucks collected routine payments on the loans from the Pennsylvania residents in Delaware.

8. Carbucks engaged in collection activity in the Commonwealth when it repossessed a vehicle in Pennsylvania.

## AUTHORITY

9. Section 201 of the LIPL establishes 6% as the lawful rate of interest for a loan or use of money in an amount of fifty thousand dollars or less, unless the loan is unsecured in which case 6% is the lawful rate of interest for a loan of thirty-five thousand dollars or less. 41 P.S. § 201.

10. Section 202 of the LIPL limits interest charged on all loans in Pennsylvania not otherwise regulated by state or federal law, to a simple rate of 6% per annum 41 P.S. § 202.

11. Section 408 of the LIPL does not allow the restriction on interest rates provided by the LIPL to be waived by the consumer as a matter of public policy. 41 P.S. § 408.

12.   Section 3 of the CDCA provides that interest, discount, bonus, fees, fines, commissions or other consideration are aggregated into the calculation of interest. *See Pa. Dep't of Banking v. NCAS of Del., LLC.* 948 A 2d 752 (2008).

13.   Section 3 of the CDCA requires any principal, employee, agent or broker, engaged in the business of arranging, negotiating or making loans or advances of money on credit in the Commonwealth of Pennsylvania in the amount or value of $25,000 or less, and charge or received interest or other considerations to have a license to charge more than the lawful rate of interest   7 P.S. § 6203; *Cash America Net of Nevada, LLC v Dep't of Banking,* 8 A.3d 282 (Pa 2010)

14.   Section 11 of the CDCA requires any principal, agent or broker, who advertises or solicits the business of lending money in Pennsylvania to have a license issued by the Department. 7 P.S. § 6211; *Cash America*

15.   Section 14.B of the CDCA prohibits the charging, contracting, collecting or receiving of interest, discounts, fees, fines, commissions, charges or other considerations in excess of the interest or discount, service charges, extension charges, deferment charges, default charges, recording and satisfaction fees, premiums for insurance, attorney's fees, court costs, repossession expenses, storage charges, and selling expenses authorized by the CDCA. 7 P.S § 6214.

16.   The Department has jurisdiction to enforce the CDCA and LIPL when a loan made to a Pennsylvania resident is repaid, in whole or in part, in money or by repossession of collateral, the value of which exceeds the principal amount of the loan, plus more than 6% interest, and any of the following facts exist:

3

(a) Loan payments are made by the consumer by any means whatsoever while the consumer remains physically in the Commonwealth;

(b) Collection activities by the lender take place in the Commonwealth by any means whatsoever, including repossession of the vehicle in Pennsylvania, the sending of collection letters or notices to the consumer physically in Pennsylvania, the sending of billing statements or invoices to the consumer physically in Pennsylvania, and the making of collection calls to the consumer physically in Pennsylvania or to his references or employer physically in Pennsylvania;

(c) Direct solicitation, marketing or advertisement by the lender to a Pennsylvania consumer physically in Pennsylvania by any means whatsoever, including by mail, wirelessly, over the telephone, or over the internet, but not including a passive website or a website blocking Pennsylvanians from use; or

(d) Applications are taken in whole or in part by a lender in person, through the mail, electronically over the internet, wirelessly, or by telephone, when the consumer is physically in Pennsylvania.

## FACTUAL ALLEGATIONS

17. The Compliance Office alleges that Carbucks arranged, negotiated and made consumer loans in amounts of $25,000 or less to Pennsylvania residents outside the Commonwealth which required repayment in amounts greater than principal and 6% interest.

18. Carbucks violated the CDCA and LIPL when it engaged in collection activities in amounts exceeding principal plus 6% interest in Pennsylvania.

19. On or about July 19, 2013, Carbucks made a loan to Redacted Redacted in the amount of $1,037.50 and

payments made by these consumers to Carbucks and collection activity including money collected by Carbucks from the sale of the vehicle after repossession in Pennsylvania, exceeded principal plus 6% interest by $4,546 00.

20. Carbucks, without admitting wrongdoing, contends that it had very limited contact with Pennsylvania residents in terms of volume; that all loans were made and executed in Delaware; that payments of principal and interest were made by consumers in Delaware, and that loan collection activity, such as repossessions, did not occur in Pennsylvania since 2015.

21. Carbucks further asserts that many of its loans were not paid back in amounts equal to principal, plus 6% interest and would not, therefore, fall within the jurisdiction of Pennsylvania in any case.

22 Carbucks cooperated with the investigation of the Department.

### ALLEGED VIOLATIONS

23. The Compliance Office alleges that Carbucks violated the CDCA when it engaged in collection activities in Pennsylvania, namely the repossession of a motor vehicle without a license under the CDCA. 7 P.S §§ 6203, 6211.

24. The Compliance Office alleges that Carbucks violated the LIPL when it engaged in the collection of loans through repossession and charged and collected interest or other consideration in excess of 6% on a loan without a license under the CDCA, or other legal authority. 41 P.S. § 202.

### RELIEF

25. <u>Cease and Desist</u>. Carbucks shall refrain from engaging in the business of the consumer discount lending within the jurisdiction of Pennsylvania as described in paragraph 16 above, by·

(a) not accepting loan payments from a Pennsylvania consumer by any means whatsoever from a consumer physically in the Commonwealth at the time of payment.

(b) not engaging in any collection activities, including repossession of a vehicle from a Pennsylvania location, the sending billing statements, invoices, collection letters or notices to Pennsylvania by any means, or making telephone calls to the consumer, his references or employer in Pennsylvania.

(c) not directly advertising, marketing, or soliciting loans to Pennsylvanians in Pennsylvania by any means.

(d) not taking application in whole or in part by any means from a Pennsylvania consumer from a consumer physically in Pennsylvania at the time of the application.

26. Carbucks shall not make any credit report to a credit reporting agency in regard to any jurisdictional loan as described in paragraph 16 above.

27. Carbucks will remove any credit reports regarding jurisdictional loans as described in paragraph 16, to the extent any such reports were made.

28. Carbucks shall not sell or assign jurisdictional loans as described in paragraph 16 above to third parties without the approval of the Department.

29. Carbucks will continue to post a disclaimer on its website and all marketing materials in a prominent manner (meaning a font size no smaller than 11 point) that it does not make loans in Pennsylvania, or that it will not make loans that would require it to actively engage in lending or loan collection activity in Pennsylvania.

30. <u>Restitution.</u>

(a) Carbucks will refund to all Pennsylvania consumers, now known or revealed in the future, any payments received that exceeds principal plus 6% simple interest, inclusive of all fees and charges, on all loans within the jurisdiction of Pennsylvania as described in paragraph 16.

(b) Carbucks shall return any money received in excess of the principal and 6% interest to the Pennsylvania consumer, now known or revealed in the future, resulting from a repossession and sale of a vehicle on a jurisdictional loan as described in paragraph 16 when and if discovered to have occurred

(c) Carbucks will refund to    Redacted    the amount of $4546.00.

31. Carbucks will provide evidence to the Compliance Office of all refunds made.

32. Carbucks may continue to collect principal and interest in the amount of 6%, inclusive of all fees and charges, from Pennsylvania residents for all loans made jurisdictional to Pennsylvania.

33. Good faith attempts will be made to locate those individuals entitled to a refund and any moneys that cannot be returned to the consumer will be sent on their behalf to the Pennsylvania Department of the Treasury.

34. Any vehicle repossessed in Pennsylvania should be returned to the consumer if that consumer can be located after good faith efforts, however, if the consumer cannot be located, the vehicle may be sold and any amount over principal plus 6% is to be returned to the consumer or the Pennsylvania Department of the Treasury as unclaimed funds.

35. Carbucks will pay a fine of $2,500 to the Department for one violation of the CDCA and LIPL.

## FURTHER PROVISIONS

36. <u>Consent</u>  The parties hereby knowingly, willingly, voluntarily and irrevocably consent to the entry of this Order, agree that they understand all the terms and conditions contained herein, and waive any right to hearing or appeal concerning the terms, conditions and/or penalties set forth in this Order.

37. <u>Publication</u>.  The Department will publish this Order pursuant to its authority in Section 302.A(5) of the Department of Banking and Securities Code. 71 P.S. § 733-302.A(5).

38. <u>Consumer Rights</u>.  This Order shall not limit or impair the consumers' rights under the LIPL. *See* 41 P.S. §§ 501-507.

39. <u>Entire Agreement</u>.  This Order contains the whole agreement between the parties. There are no other terms, obligations, covenants, representations, statements, conditions, or otherwise, of any kind whatsoever concerning this Order.  This Order may be amended in writing by mutual agreement by the parties.

40. <u>Binding Nature</u>.  The Department and Respondents intend to be and are legally bound by the terms of this Order.  This Order shall be enforceable in a court of competent jurisdiction by the Department and Respondents.  This Order shall be binding upon and inure to the benefit of Carbucks' present and future owners, principals, directors, officers, members, partners, managers, agents, employees, successors and assigns.

41. <u>Counsel</u>.  This Order is entered into by the parties upon full opportunity for legal advice from legal counsel.

42. <u>Effectiveness</u>.  This Order shall become effective on the date that a fully executed document is docketed in the Office of the Secretary.

43. <u>Other Enforcement Action</u>.

8

(a) The Department reserves all of its rights, duties, and authority to enforce all statutes, rules and regulations under its jurisdiction against Carbucks in the future regarding all matters not resolved by this Order.

(b) Carbucks acknowledges and agrees that this Order is only binding upon the Department and not any other local, state or federal agency, department or office regarding matters within this Order.

44. **Authorization.** The parties below are authorized to execute this Order and legally bind their respective parties.

45. **Counterparts.** This Order may be executed in separate counterparts and by facsimile or email.

46. **Titles.** The titles used to identify the paragraphs of this document are for the convenience of reference only and do not control the interpretation of this document.

**WHEREFORE,** in consideration of the foregoing, including the recital paragraphs, the Commonwealth of Pennsylvania, Department of Banking and Securities, Compliance Office and Carbucks of Delaware, Inc., do hereby execute this Consent Agreement and Order.

FOR THE COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF BANKING AND SECURITIES

Signature: Redacted
Title: Administrator
Compliance Office
Department of Banking and Securities

Date: 9/26/2018

FOR CARBUCKS OF DELAWARE, INC.

Signature: Redacted          Signature: Redacted

Print: Philip Heitlinger          Print: *Scott Friedman*
Title: President                   Title: VP
Date: 9/25/2018                    Date: 9-25-18