UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DAVID V. MAYO,** for himself and others similarly situated,<br><br>　　　　Plaintiff,<br><br>　　v.,<br><br>**TITLEMAX OF DELAWARE, INC.,** and **TRACY YOUNG,**<br><br>　　　　Defendants. | Civil Action No. 21-02964 |

**Plaintiff's Preliminary Memorandum in Favor of Class Certification**

　　Titlemax of Delaware, Inc., ("Titlemax") largely admits to the propriety of class treatment for plaintiff's claims in its notice of removal. Based on past performance, Titlemax anticipates extending high-interest auto title loans to over 1,100 borrowers from Pennsylvania resulting in an aggregate liability of over $6,600,000. Notice of Removal, ECF 1-6 ¶ 24. Titlemax says that an injunction against making usurious loans will save Pennsylvania borrowers more than $5,000,000 in usurious interest payments. *Id.* Protecting Pennsylvanians from becoming indebted for over $5,000,000 in usurious interest is the exact reason class-wide injunctive and declaratory relief is appropriate.

## Background

　　Titlemax began operating in Delaware in 2012 and plans to operate continuously into the future. Notice of Removal, ECF 1-4 ¶ 17. Titlemax admits to entering into over 100 loans with Pennsylvania borrowers from brick-and-motor stores in

1

Delaware "in only a few months of doing business." ECF 1-4 ¶ 18. Titlemax is in the business of making high-interest loans secured by car titles. Titlemax charges triple-digit rates of interest on car title loans, and that is its business model. In Mr. Mayo's case, Titlemax charged 132.01% A.P.R. and wanted him to pay $33,452.71 on a loan of $7,751.39. Based on its past volume of business, Titlemax anticipates entering into at least 1,100 loans with Pennsylvania borrowers over 18 months of future operations, resulting in liabilities of over $5,000,000 that would be usurious under Pennsylvania law. ECF 1-6 ¶ 24.

      Titlemax's counsel stated that Titlemax has decided to stop lending to Pennsylvania borrowers. If that is true, it should be easy for this case to settle, but plaintiff has not received any settlement offers from Titlemax. Titlemax's present posture in this case is that it is fighting plaintiff's attempt to enjoin it from lending to Pennsylvania borrowers at triple digit rates of interest.

      Mr. Mayo entered into his loan with Titlemax on April 10, 2021. Mr. Mayo has made payments under the loan but has not yet paid more than the principal he borrowed. On June 2, 2021, Mr. Mayo filed a class action complaint against Titlemax in the court of common pleas in Philadelphia Pennsylvania. On July 2, 2021, Titlemax filed a notice of removal to the federal district court under the Class Action Fairness Act. Following removal, Mr. Mayo filed an amended complaint to add federal causes of action under the Racketeer Influenced and Corrupt Organizations Act and the Truth-In-Lending Act.

In his complaint, Mr. Mayo proposes to represent a class consisting of Citizens of Pennsylvania who may in the future enter into agreements with Titlemax for loans for personal, family, or household purposes, secured by the borrower's automobile, at a rate of interest of 30% A.P.R. or more. The most salient factor underlying this class definition is that most present borrowers are bound by an arbitration clause in the loan agreement from participating in a class action, so Mr. Mayo proposes to represent a class of future borrowers who are not yet bound by the clause. Mr. Mayo exercised an option in his loan agreement to reject the arbitration clause.

Count I of the amended complaint is brought by Mr. Mayo under Pennsylvania's Loan Interest and Protection Law ("LIPL"), 41 P.S. 504, for himself and the class for declaratory judgment. Specifically, he asks the court to make a ruling for himself and a class of future borrowers that their loans are governed by Pennsylvania law, rather than Delaware law as proposed in the contract. Under Pennsylvania law, Titlemax's practice of charging triple-digit rates of interest is illegal. Upon further consideration, plaintiff thinks it would be more effective to amend count I to also include a request for an injunction against Titlemax making loans to Pennsylvania borrowers in violation of LIPL.

Count IV of the amended complaint asserts a claim for violation of the Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. 201-9.2. Mr. Mayo asserts that Titlemax is violating the UTPCPL by misrepresenting to Pennsylvania borrowers the rate of interest they can be charged and misrepresenting the amount of borrowers' liability on the loans as a result of the application of an illegal

rate of interest. Mr. Mayo requests that Titlemax be enjoined from misrepresenting the rate of interest legally applicable to its loans to Pennsylvania borrowers and be enjoined from applying borrowers' payments to illegal interest in violation of Pennsylvania law.

## Argument

I. **PLAINTIFF'S PROPOSED CLASS SATISFIES THE REQUIREMENTS OF F.R.C.P. 23(a), (b)(2) & (c)(1)(b).**

Certification of a rule 23(b)(2) class seeking only declaratory and injunctive relief is proper if it meets the requirements of rule 23(a), is cohesive under rule 23(b)(2), and capable of a readily discernible, clear, and precise statement of the parameters defining the class required by 23(c)(1)(B). *T.R. v. Sch. Dist. of Phila.*, Civil Action No. 15-4782, Slip Op. at 15-16 (E.D. Pa., April 18, 2019).

(a). *Numerosity.*

Titlemax itself estimates that an injunction will prevent it from making 1,100 usurious loans to Pennsylvania borrowers over an 18 month period. That should certainly meet the numerosity required of rule 23(a)(1), especially in the context of a 23(b)(2) class. A class of future participants is never going to be a known finite group, but Rule 23(b)(2) was written to remedy systemic violations of rights of large and often amorphous classes, *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 64 (3d Cir. 1994), such as a class of future borrowers.

To establish numerosity in this context, Mr. Mayo needs discovery of the loans Titlemax has made to Pennsylvania borrowers over the past two years. The records should include the numbers of Pennsylvania borrowers, the amount loaned, the rates of interest charged, the identification of the collateral, whether Titlemax recorded a lien

with the Pennsylvania Department of Transportation, the number of repossessions Titlemax performed in Pennsylvania, the locations vehicles were stored and sold following a repossession, and the amount of money collected from Pennsylvania borrowers. Loan documents and account histories will provide most of the discovery plaintiff needs. These records would demonstrate the extent of Titlemax's lending in Pennsylvania which will, in turn, show the potential damage to Pennsylvania citizens, the nature and extent of Titlemax's presence in Pennsylvania, and the interest of the Commonwealth in having its laws apply to these transactions.

(b). *Common Questions of Law and Fact.*

There is one common question of law and fact that binds all potential class members. Whether the Delaware choice of law clause in Titlemax's form loan agreement allows Titlemax to engage in asset-based lending in Pennsylvania without regard to the usury limits imposed under Pennsylvania law. There is only one way for Titlemax to violate Pennsylvania's usury laws, and that is by charging too much interest. Every borrower charged a usurious rate of interest will experience the same injury. Some borrowers may potentially pay more than others. Some borrowers might have their cars repossessed. But one ruling, declaring the application of Pennsylvania law to all potential Pennsylvania borrowers and enjoining Titlemax from charging interest in excess of Pennsylvania law will protect the class, and stop Titlemax from lending in Pennsylvania.

(c). *Typicality.*

Typicality under rule 23(a)(3) exists where the class representative's claims are (1) generally the same as the class with respect to the underlying legal theory and

material facts; (2) the class representative is not subject to any unique defenses that do not apply to the class, and (3) the interests of the class representative are aligned with the class. *T.R. v. Sch. Dist. of Phila.*, Slip Op. at 36. Mr. Mayo's claims have the same legal and factual basis as all prospective class members. The legal basis is that Pennsylvania borrowers cannot waive the protection of the LIPL under 41 P.S. § 408, or that the application of Delaware law violates a fundamental policy of the state with the greatest interest in the transaction under the Restatement (Second) of Conflicts of Law, § 187. The material facts to make these arguments are the same for all class members. All class members reside in Pennsylvania. Titlemax takes a lien on each class member's vehicle in Pennsylvania. Each class member will suffer the diversion of substantial sums of money away from their living expenses to pay large sums of interest to Titlemax. Each class member will be subject to the potential repossession of their vehicles in Pennsylvania. Many borrowers may have their vehicles repossessed and suffer additional hardship created by the loss of an important asset they need for basic transportation. The Commonwealth has the same interest in protecting all Pennsylvanians from experiencing these harms. Some borrowers may default while others do not, but the overarching issue is the applicable law to govern the rate of interest. Mr. Mayo has the same interest in saving himself from having to pay usurious interest as all other potential class members.

    (d).  *Adequacy of Representation.*

Mr. Mayo does not have any conflicts of interest. He has the same interest as potential absent class members in repaying his loan under Pennsylvania law. Undersigned counsel has experience litigating similar cases. Counsel has brought

similar cases against other auto title lenders in court and private arbitrations on multiple occasions. Handling this case should not overtax counsel's resources. Since the class action aspect of this case solely involves declaratory and injunctive relief there will be no expense relating to notifying class members or claims administration.

(e). *Rule 23(b)(2) Requirements.*

The key to a rule 23(b)(2) class is the indivisible nature of the injunctive and declaratory remedy. The conduct at issue must be susceptible to being enjoined or declared unlawful in its entirety, as to all class members or as to none. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011). This requirement is met in this case. Every loan Titlemax makes to a Pennsylvania borrower at a triple-digit rate of interest is a fundamental violation of Pennsylvania law that the court can declare unlawful and enjoin without any need to consider the individual circumstances of borrowers.

(f). *Class Definition.*

An order that certifies a class action must define the class and the class claims, issues, or defenses. F.R.C.P. No. 23(c)(1)(b). Mr. Mayo proposes to represent a class consisting of citizens of Pennsylvania who may in the future enter into an agreement with Titlemax for a loan for personal, family, or household purposes, secured by the borrower's automobile, at a rate of interest of 30% A.P.R. or more. This definition frames for consideration the issue of whether or not Pennsylvania law applies to Titlemax's loans to Pennsylvania consumer borrowers in the aggregate. This statement encompasses the population of Pennsylvania borrows who will fall victim to usurious loans by Titlemax absent an injunction requiring compliance with Pennsylvania law.

## Conclusion

Titlemax has engaged in a practice of making loans to Pennsylvania borrowers in violation of the Commonwealth's usury laws. Titlemax says it can use a choice of law clause to avoid compliance with Pennsylvania law, but it cannot. A class-wide declaratory and injunctive remedy is needed to bring Titlemax into compliance with Pennsylvania law.

_____
Robert F. Salvin (RFS2522)
Two Bala Plaza, Suite 300
Bala Cynwyd, PA  19004
215-300-2388
215-271-2820 (fax)
robert.salvin@outlook.com

## CERTIFICATE OF SERVICE

I, Robert F. Salvin, hereby certify that on April 8, 2022, a true and correct copy of the foregoing document was served upon all counsel of record via the Court's ECF system.

_____
Robert F. Salvin (RFS2522)
Two Bala Plaza, Suite 300
Bala Cynwyd, PA  19004
215-300-2388
215-271-2820 (fax)
robert.salvin@outlook.com